## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **AARON V. PERRY, individually, and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 6:24-CV-01183-KHV-ADM** |
| **KANSAS STAR CASINO, LLC, et al.,** | |
| **Defendants.** | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

I.    The Scope of the Renewed Motion for Settlement Approval is Limited to Plaintiff's Counsel's Reasonable Attorneys' Fees. ......................................................................... 2

II.    The Court Should Award 25% of the Fund as Attorneys' Fees. ....................................... 3

    A.    The percentage-of-the-fund method is appropriate here where Plaintiff's counsel efficiently and effectively secured a fund to benefit the collective. ....................... 4

    B.    A lodestar analysis confirms the reasonableness of the requested percentage. ...... 5

        i.    Plaintiff's counsel's hourly rates are reasonable considering their skill, experience, and reputation. ........................................................................ 6

        ii.    The time Plaintiff's counsel spent on this case is reasonable. ................... 9

        iii.    The modest multiplier on Plaintiff's counsel's lodestar is reasonable. .... 10

    C.    The *Johnson* factors confirm the reasonableness of the requested percentage. .... 12

        i.    The "strong result" obtained supports the requested fee (Factor 8). ......... 12

        ii.    This case involved novel and complicated issues under the FLSA (Factor 2). ............................................................................................... 13

        iii.    Significant skill was required to achieve this result (Factors 3 and 9), which is relevant to the risk Plaintiff's counsel faced in pressing these claims (Factor 6). .................................................................................. 14

        iv.    The customary fee and awards in similar cases show that the requested one-third fee is reasonable (Factors 5 and 12). ........................................ 15

        v.    The time and labor required and preclusion of other work (Factors 1 and 4). .............................................................................. 16

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Aztar Indiana Gaming Co., LLC*,
  2023 WL 6536785 (S.D. Ind. Aug. 11, 2023) ........................................................ 6

*Bank of Am. Wage & Hour Emp. Litig.*,
  2013 WL 6670602 (D. Kan. Dec. 18, 2013) ............................................................ 4

*Bartakovits v. Wind Creek Bethlehem LLC*,
  2022 WL 702300 (E.D. Pa. Mar. 7, 2022) ........................................................ 1, 15

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ................................................................................................. 3

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) ................................................................................. 4

*Bruner v. Sprint/United Mgmt. Co.*,
  2009 WL 2058762 (D. Kan. July 14, 2009) ......................................................... 6, 9

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,
  888 F.3d 455 (10th Cir. 2017) ........................................................................... 4, 15

*Crawford v. Lexington-Fayette Urb. Cnty. Gov't*,
  2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) ......................................................... 13

*Florece v. Jose Pepper's Restaurants, LLC*,
  2021 WL 5042715 (D. Kan. Oct. 29, 2021) ........................................................... 10

*Garcia v. Tyson Foods, Inc.*,
  2012 WL 5985561 (D. Kan. Nov. 29, 2012) ............................................................ 6

*Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ................................................... 4, 11

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
  995 F.2d 414 (3d Cir. 1993) ................................................................................... 11

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................... 12

*In re Syngenta AG MIR 162 Corn Litig.*,
  61 F.4th 1129 (10th Cir. 2023) ..................................................................... 2, 4, 16

*In re Syngenta AG MIR 162 Corn Litig.*,
  357 F. Supp. 3d 1094 (D. Kan. 2018) ............................................................. 10, 15

*Jackson County v. Trinity Industries, Inc.*,
  Case No. 1516-CV23684, 2022 WL 4235745 (Mo. Cir. Ct. Aug. 30, 2022) ........................... 8

*James v. Boyd Gaming Corp.*,
  2022 WL 4482477 (D. Kan. Sept. 27, 2022) ................................................................. *passim*

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir.1974) ........................................................................................ 11

*Juarez v. Midwest Div. - OPRMC, LLC*,
  2025 WL 1029395 (D. Kan. Apr. 7, 2025) ..................................................................... 9

*KPH Healthcare Services, Inc. v. Mylan, N.V.*,
  2024 WL 3360499 (D. Kan. July 9, 2024) .................................................................... 16

*Krant v. UnitedLex Corp.*,
  2024 WL 5187565 (D. Kan. Dec. 20, 2024) .................................................................... 4

*Lucero v. City of Trinidad*,
  815 F.2d 1384 (10th Cir. 1987) .................................................................................... 7

*Marquez v. Midwest Div. MMC, LLC*,
  2022 WL 17093036 (D. Kan. Nov. 21, 2022) ............................................................ 5, 10

*McFadden v. Sprint Commc'ns, LLC*,
  2024 WL 3890182 (D. Kan. Aug. 21, 2024) ................................................................ 16

*O'Dell v. Aya Healthcare, Inc.*,
  753 F. Supp. 3d 1155 (S.D. Cal. 2024) ........................................................................ 7

*Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kansas, Inc.*,
  2023 WL 6216307 (D. Kan. Sept. 25, 2023) ................................................................ 8

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) ...................................................................................... 4

iii

## INTRODUCTION

The Court found the $981,000 common fund settlement is a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act warranting final collective certification. *See* Order, Doc. 44 at 5-9. The sole remaining issue is determining a reasonable award of attorneys' fees to Plaintiff's counsel.[1] Reflecting on the Court's Order, Plaintiff's counsel now seek 25% of the fund as attorneys' fees, or $245,250. Plaintiff's counsel voluntarily reduce their request for fees by one-quarter in consideration of the Court's instruction to account for risk the claims faced because of Plaintiff's counsel's significant experience in similar cases and prior work on *James v. Boyd Gaming Corp.*, 2022 WL 4482477 (D. Kan. Sept. 27, 2022) (Crabtree, J.).

Having followed the Court's instruction, application of the *Johnson* factors confirms the reasonableness of the requested 25% fee. In particular, the result obtained and the skill and experience necessary to do so underscore the appropriateness of the requested fee. Multiple federal judges have found that Plaintiff's counsel are "uniquely skilled and efficient in prosecuting casino wage and hour cases"[2] and that "skill and experience most likely contributed to their success in … resolving the litigation through a settlement that provides significant benefits to collective members."[3] It is precisely that skill and expertise—hard-won in dozens of contentious cases—that allowed Plaintiff's counsel to efficiently and effectively litigate these claims and obtain a settlement that this Court found was a "strong result for collective members." Doc. 44 at 9.

---

[1] Plaintiff's counsel will not separately seek to recover their Westlaw expenses and Plaintiff Perry submits a revised service award request of $1,100 consistent with the Court's Order, which Plaintiff believes resolves the other two remaining issues in the Order. Doc. 44 at 12-13, n.12.

[2] *Bartakovits v. Wind Creek Bethlehem LLC*, 2022 WL 702300, at *3 (E.D. Pa. Mar. 7, 2022).

[3] *James*, 2022 WL 4482477, at *15.

Although the Tenth Circuit has held that "applying the lodestar method to a common fund case can fail to account for the productive quality of an attorney's labor," *see In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1129 at 1192 (10th Cir. 2023), here, a lodestar analysis confirms the reasonableness of the requested fee. Not including the future work this case will require, the reduced fee request is a 1.2 multiplier on Plaintiff's counsel's lodestar, which is well within the range approved by the Tenth Circuit. Further, when viewed alongside *James*, Plaintiff's counsel is still recovering a significant negative return on their time across both cases despite Judge Crabtree recognizing that a full lodestar fee would have been the customary fee in *James*.

Absent Plaintiff's counsel's willingness to take this case on a contingency and apply their years of hard-earned experience, these workers would likely still be subject to the unlawful tip pooling practice. Further, Plaintiff's counsel appear to be the only lawyers to have ever brought casino wage claims challenging accrual of fringe benefits for dual-job workers in a tip pool setting, such that, without counsel's work, the collective probably would have recovered nothing at all. Instead, Plaintiff's counsel secured a fund representing 77% of unpaid wages with checks to collective members now exceeding $1,400 *per capita*. Further confirming it is a reasonable fee, no collective member objected to the higher requested fee after receiving direct notice. Status Report, Doc. 43. Results matter and Plaintiff's counsel delivered a strong result. The request for attorneys' fees is reasonable and should be approved.

## **ARGUMENT**

**I.    The Scope of the Renewed Motion for Settlement Approval is Limited to Plaintiff's Counsel's Reasonable Attorneys' Fees.**

As Plaintiff's counsel understood the Court's Order on settlement approval, the Court has found that: (1) final collective certification is appropriate (Doc. 44 at 5-6); (2) the settlement resolves a *bona fide* dispute of FLSA coverage (*id*. at 6-8); and (3) the settlement is a fair and

reasonable resolution (*id*. at 8-9) except for three discrete questions. The remaining issues to be resolved prior to final approval are Plaintiff's counsel's entitlement to a reasonable fee (*id*. at 10-12) and reimbursement of advanced expenses (*id*. at 12, n.7) and a reasonable service award for Plaintiff Perry (*id*. at 12-13).

Plaintiff believes the following concessions resolve the Court's latter two concerns. First, Plaintiff's counsel will absorb the cost of the Westlaw charges through any award of attorneys' fees (although that is not counsel's typical practice as evidenced by the Court's citation to *James*, Doc. 44 at 12, n.7), which will further decrease counsel's lodestar multiplier. Second, Plaintiff Perry reduces his request for a service award to $1,100 consistent with the Court's Order. *Id*. at 12. On the issues of general settlement approval, Plaintiff's counsel's other expenses, and the service award, Plaintiff relies on the extensive briefing previously submitted to conserve the Court's time. *See generally* Doc. 41.

## II.  The Court Should Award 25% of the Fund as Attorneys' Fees.

When dealing with a common fund for the benefit of a class or collective, the Supreme Court has long recognized "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). This understanding "prevent[s] . . . inequity" by proportionately spreading payment among those who benefit from others' labor. *Id.* at 478. Here, Plaintiff's counsel followed the Court's instruction to account for the Court's view of Plaintiff's counsel's relative risk by voluntarily reducing their fee request to 25% of the common fund.[4] The requested fee is appropriate under the percentage of the fund method, which is

---

[4] Plaintiff's counsel arrived at 25% after reflecting on the Court's Order and considering the Court's perspective on the risk Plaintiff's counsel undertook in pressing these claims on a contingency relative to Plaintiff's counsel's experience in similar cases as well as the result

confirmed by analysis of the *Johnson* factors. It is likewise a reasonable 1.2 multiplier on Plaintiff's counsel's lodestar.

### A.    The percentage-of-the-fund method is appropriate here where Plaintiff's counsel efficiently and effectively secured a fund to benefit the collective.

As the Court noted in its Order, there are two methods for determining attorneys' fees in common fund cases: the percentage-of-the-fund method or the lodestar approach. *See* Order, Doc. 44 at 10; *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 458-459 (10th Cir. 2017) (citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)). However, when counsel's efforts create a common fund, the percentage method is preferred. *Chieftan Royalty Co.*, 888 F.3d at 458-59. ("…expressing a preference for the percentage-of-the-fund approach" versus the loadstar method.); *Krant v. UnitedLex Corp.*, 2024 WL 5187565, at *6 (D. Kan. Dec. 20, 2024) (Crabtree, J.) ("The Tenth Circuit prefers the percentage-of-the-fund method when determining the award of attorney fees in common fund cases."). The Tenth Circuit has identified several reasons for this, including that "the lodestar approach in common fund cases 'encourages significant elements of inefficiency'" and can "can fail to account for the productive quality of an attorney's labor." *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1192. Meanwhile, that is a strength of the percentage method, because "the fund, itself, is the measure of an attorney's success" and "'inefficiently expended hours only serve to reduce the per hour compensation of the attorney expending them.'" *Id.* (quoting *Swedish Hosp. Corp. v. Shalala*, 1

---

achieved in the *James* matter. Order, Doc. 44 at 12. After careful consideration and heeding the Court's suggestion, Plaintiff's counsel elected to reduce their request for fees to a lower percentage within the customary range. *See Brown v. Phillips Petroleum Co*., 838 F.2d 451, 455, n.2 (10th Cir. 1988) (collecting cases awarding between 22% to 33% in connection with discussing customary fee *Johnson* factor); *In re Bank of Am. Wage & Hour Emp. Litig.*, 2013 WL 6670602, at *3 (D. Kan. Dec. 18, 2013) (Lungstrum, J.) (approving 25% common fund fee in wage and hour case where Stueve Siegel Hanson served as lead counsel).

F.3d 1261, 1269 (D.C. Cir. 1993)). Even still, a lodestar analysis confirms the reasonableness of the requested 25% fee in this case.

### B.    A lodestar analysis confirms the reasonableness of the requested percentage.

As detailed in the accompanying Declaration of Alexander T. Ricke, Plaintiff's counsel have thus far expended 253 hours for a current lodestar of $192,160 at counsel's standard hourly rates. Ricke Decl. at ¶ 31; McClelland Decl. at ¶ 13. The requested fee thus represents a 1.2 multiplier on counsel's lodestar. *Id.*; *see also Marquez v. Midwest Div. MMC, LLC*, 2022 WL 17093036, at *6 (D. Kan. Nov. 21, 2022) (Crabtree, J.) (approving 1.5 multiplier on lodestar resulting in a realization rate of $844 per hour in wage and hour case noting "our court and others have approved requested fee awards when the multiplier for the lodestar amount is 1.5 or greater"). A lodestar analysis informed by the *Johnson* factors supports approval of the requested 25% fee.[5]

---

[5] For the lodestar analysis, Plaintiff's counsel did not include time spent preparing the *renewed* motion for settlement approval (which is a material amount of hours plus Westlaw expenses) because that task largely pertained to justifying Plaintiff's counsel's fees. However, Plaintiff's counsel does include the time spent preparing the *original* motion for settlement approval, which was not captured in the original motion for settlement approval simply due to the nature of the time it takes for time entries to post into Plaintiff's counsel's timekeeping system. In addition, Plaintiff's counsel includes the time spent communicating with collective members since notice issued, which was after Plaintiff's counsel filed the original motion for settlement approval. As of September 27, 2025, Plaintiff's counsel had 88 telephone calls and emails with 44 collective members regarding the settlement. There have been more since that data pull occurred. As explained in the Ricke Declaration, these were principally handled by paralegals in an exercise of billing judgment, but Mr. Ricke did direct the responses and handled a number of these communications personally. Those communications justified a senior lawyer's involvement because they required explaining substantive aspects of the settlement, explaining how wage data was used to calculate settlement payments, cross-checking the settlement payments against the wage data, and explaining why the nature of tip credit damages (the lower the direct cash wage, the higher the tip credit) could translate into longer tenured workers who earn higher hourly rates recovering less than workers paid lower rates. Based on Plaintiff's counsel's experience in similar cases, Plaintiff's counsel reasonably expect to expend at least an additional 25 hours working with the settlement administrator to issue payments and communicating with collective members if the Court ultimately approves the settlement. This will result in a further decrease in the lodestar multiplier. Ricke Decl. at ¶¶ 28, 35; *see also Marquez*, 2022 WL 17093036, at *6 (D. Kan. Nov. 21, 2022) (considering that future "work with the Settlement Administrator to process the class

### i.    Plaintiff's counsel's hourly rates are reasonable considering their skill, experience, and reputation.

"The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Garcia v. Tyson Foods, Inc.*, 2012 WL 5985561, at *3 (D. Kan. Nov. 29, 2012) (Marten, J. (Ret.)), *aff'd*, 770 F.3d 1300 (10th Cir. 2014). Plaintiff's counsel's hourly rates are detailed in the Ricke and McClelland Declarations, which establish the blended hourly rate here is $758 per hour.[6] In addition to the *Johnson* factors discussed at length below, four key factors support the reasonableness of Plaintiff's counsel's hourly rates for the lodestar analysis.

**First**, Plaintiff's counsel possess significant skill, experience, and reputation in casino wage and hour litigation, which justify their rates. When Stueve Siegel Hanson lawyers obtained a jury verdict in a wage and hour class and collective action in the District of Kansas, Judge Marten (Ret.) noted that the firm's "experience in wage-hour class actions has unmatched depth." *Garcia*, 2012 WL 5985561, at *4; *see also Bruner v. Sprint/United Mgmt. Co.*, 2009 WL 2058762, at *8 (D. Kan. July 14, 2009) ("Plaintiffs' attorneys … are highly experienced …"). Moreover, Plaintiff's counsel are among the most experienced lawyers in the country at prosecuting wage and hour violations against casinos. *See* Ricke Decl. at ¶¶ 8-14; *see also Adams v. Aztar Indiana Gaming Co., LLC*, 2023 WL 6536785, at *6 (S.D. Ind. Aug. 11, 2023) ("Over the past six years, Class Counsel has litigated over 20 wage and hour claims against casino operators and have obtained key rulings relevant to and that have informed the settlement value in this case."). In fact,

---

and collective action members' claims, answer their questions, and distribute their settlement awards" will increase lodestar and decrease multiplier, which supported the fee request).

[6] The requested fee would then result in a 1.2 multiplier on Plaintiff's counsel's lodestar as explained below. Ricke Decl. at ¶ 31.

as far as Plaintiff's counsel are aware, they are the only lawyers to have prosecuted or settled claims challenging tip pooling practices focused on payment of fringe benefits from the pool to dual-job employees. Ricke Decl. at ¶ 5.

This Court noted that "Defendants raised several arguments that, if successful, would have resulted in the collective recovering nothing." Order, Doc. 44 at 8. Likewise, Judge Crabtree found regarding the same tip pooling claims that there was "the potential for either side to prevail if the case continued." *James*, 2022 WL 4482477, at *9. Even considering Defendants' potentially dispositive arguments, the Court found that Plaintiff's prosecution of this case was done with "minimal to no risk" citing to Plaintiff's counsel's experience in similar cases and prior work on *James*. Doc. 44 at 12. Although Plaintiff's counsel believe they faced risk, Plaintiff's counsel respectfully suggest that the weight the Court has placed on counsel's prior experience and prior work in *James* support approving the requested hourly rates. Only skilled lawyers could minimize the risk to that degree in a complex, nationwide FLSA collective action that has twice been found to present a *bona fide* dispute of FLSA liability against a well-defended Fortune 1000 company with a market capitalization approaching $7 billion.

**Second**, the rates documented in the Ricke Declaration are consistent with the rates that Stueve Siegel Hanson charges to hourly, non-contingent fee-paying clients. *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987) ("If the lawyer seeking the fee is in private practice, his or her customary rate would be a relevant but not conclusive factor."). For example, in early 2024, Mr. Hanson and Mr. Ricke were engaged in an hourly, non-contingent employment matter in Kansas City where they billed and collected $1,325 and $825 per hour respectively. Likewise, Mr. Stueve has billed and collected $675 per hour in two hourly non-contingent matters in 2025. Ricke Decl. at ¶ 36. The requested rates are also consistent with rates awarded to Stueve Siegel

Hanson in contested lodestar fee applications in a recent employment matter. *O'Dell v. Aya Healthcare, Inc.*, 753 F. Supp. 3d 1155, 1161 (S.D. Cal. 2024) (awarding Stueve Siegel Hanson $137,966.27 in fees based on 162 hours of attorney time (blended rate of $851 per hour) as a sanction in an employment case and finding that "counsel's and staff's hourly rates as reflected in the declaration are reasonable, and that the work performed was also reasonable under the circumstances.").[7]

**Third**, Plaintiff's counsel's hourly rates are consistent with the hourly rates that Judge Crabtree found would have supported a full lodestar fee in the predecessor case, even more so when adjusted for inflation and additional experience. *James,* 2022 WL 4482477, at *15 ("Here, plaintiff argues, the requested fee is less than the 'customary fee' in FLSA cases because it's significantly less than (roughly half) the lodestar calculated using the 2,991.6 hours worked multiplied by counsel's standard hourly rates. The court agrees. The requested fee award is less than the 'customary fee' in FLSA cases litigated through a damages award."); *Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kansas, Inc.*, 2023 WL 6216307, at *14 (D. Kan. Sept. 25, 2023) (citing Mr. Ricke's declaration setting out the lodestar in *James* as "rates that have been approved in this District in recent years" and "standard hourly rates in the Kansas City metropolitan area").

---

[7] *Maldonado v. MGM Resorts International*, Case No. 1:20-CV-05599, Doc. 64 (D.N.J. July 6, 2022), Transcript of Final Approval Hearing at 15:5-16 (approving blended hourly rate of approximately $725 per hour for Plaintiff's counsel on lodestar crosscheck finding that "the lodestar is $1,164,738 based on 1,600 hours of work by counsel … The reasonable lodestar supports the approval of the fee as requested."); *Jackson County v. Trinity Industries, Inc.*, Case No. 1516-CV23684, 2022 WL 4235745, at ¶ 7 (Mo. Cir. Ct. Aug. 30, 2022) (awarding fees under the lodestar method to Stueve Siegel Hanson and approving blended hourly rate of $662 for the firm (including Mr. Ricke's 2022 associate rate of $675/hour) with a 1.07 lodestar multiplier).

**Fourth**, Plaintiff's counsel's rates are generally consistent with the rates approved by this Court historically for Stueve Siegel Hanson's work in wage and hour cases when accounting for inflation. In *Bruner v. Sprint/United Mgmt. Co.*, this Court awarded Stueve Siegel Hanson $590.91 per hour from a common fund in a wage and hour case. 2009 WL 2058762, at *10 (D. Kan. July 14, 2009). Accounting for inflation between July 2009 and August 2025 (the last month for which CPI inflation data is available), $590.91 would be $888.97 in last month's dollars.[8] The inflation-adjusted *Bruner* award of $888 per hour is between the $758 per hour blended rate and requested realization rate of $967 (requested fee ($245,250) divided by current hours (253.4))—recognizing that both numbers will decrease as Plaintiff's counsel spend more time on this case. *Juarez v. Midwest Div. - OPRMC, LLC*, 2025 WL 1029395, at *6 (D. Kan. Apr. 7, 2025) (applying inflation to previously-approved rates in Kansas City area to award hourly rates up to $745/hour).

In sum, ordinarily, clients pay more to hire attorneys with subject-matter expertise and a track record of successful outcomes. Plaintiff's counsel acknowledge their rates are on the high end in Kansas City, but the Court's point about counsel's successful mitigation of legitimate litigation risk demonstrates why hourly, non-contingent clients have paid and trial courts locally and around the country have approved Plaintiff's counsel's rates.

### ii.  The time Plaintiff's counsel spent on this case is reasonable.

Thus far, Plaintiff's counsel have expended 253.4 hours in furtherance of the collective's claims. As detailed in the Ricke Declaration, this work includes fact investigation beginning in late 2023, communications with Defendants regarding the investigation and negotiation of a tolling agreement, preparing the Complaint, negotiating and preparing a stipulation to collective

---

[8] Plaintiff's counsel relied on the U.S. Bureau of Labor Statistics publicly available Consumer Price Index Inflation Calculator for this calculation, which is available at: https://www.bls.gov/data/inflation_calculator.htm

certification, drafting a motion for conditional certification and notice documents, conducting a notice and consent to join with approximately 1,000 workers, opting more than 500 workers into the case, negotiating a schedule, preparing targeted discovery to each casino; reviewing discovery responses and documents, reviewing damages data, preparing a collective-wide settlement demand, negotiating a settlement, drafting the settlement documents, moving for settlement approval, and overseeing a second notice process with significant collective engagement. Further, Plaintiff's counsel conservatively expect to spend at least another 25 hours administering the settlement and communicating with collective members. Ricke Decl. at ¶¶ 32-35. Plaintiff's counsel's hours are reasonable.

### iii.    The modest multiplier on Plaintiff's counsel's lodestar is reasonable.

The requested 25% fee would result in a 1.2 multiplier on Plaintiff's counsel's current lodestar of approximately $192,000. As well as being a reasonable multiplier for this type of work,[9] the requested multiplier is less than those awarded to Stueve Siegel Hanson in this District.[10] In addition to the points made under the *Johnson* factors below and in Plaintiff's opening brief, the unique circumstances of this case justify the requested multiplier.

The Court's Order poses the question of why Plaintiff's counsel should receive an award of "twice their lodestar in this case" when they "received a fee of roughly half their lodestar in *James*." Order, Doc. 44 at 11. Plaintiff's counsel respectfully urge the Court to consider that

---

[9] *See, e.g.*, *Florece v. Jose Pepper's Restaurants, LLC*, 2021 WL 5042715, at *5-6 (D. Kan. Oct. 29, 2021) (Mitchell, J.) (awarding $577,500 in fees based on 425.4 hours of work for a lodestar of $217,867.50 in wage and hour case resulting in 2.65 lodestar multiplier and a $1,357 per hour realization rate on counsel's time); *Marquez*, 2022 WL 17093036, at *6 (D. Kan. Nov. 21, 2022) (approving 1.5 multiplier on lodestar resulting in a realization rate of $844 per hour in wage and hour case).

[10] *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1115 (D. Kan. 2018) (noting that multipliers of 2 and 3 "are well within the range accepted by other courts, even in cases without trials") (Lungstrum, J.).

*because* they were not paid for their full lodestar in *James* weighs strongly in favor of the requested multiplier here. In *James*, Plaintiff's counsel expended nearly 3,000 hours and recovered roughly half their lodestar. Judge Crabtree found that the "customary fee" would have been counsel's full lodestar. *James,* 2022 WL 4482477, at *15 ("The court agrees. The requested fee award is less than the 'customary fee' in FLSA cases litigated through a damages award. And, although the collective members never recovered an FLSA damages award here, plaintiff's counsel assisted them by avoiding the uncertainty of prevailing on their FLSA claims through continued litigation by negotiating a settlement that achieves a significant result for the collective members. This factor also favors approving the requested fee award.").

To that end, Plaintiff's counsel understood the Court's Order to suggest that Plaintiff's counsel's work in *James* decreased the risks posed by and work necessary for the present case; it thus stands to reason that the earlier work benefitted the collective. Doc. 44 at 12. If so, it is reasonable to consider the significant unpaid lodestar in *James* against the reasonable multiplier here to conclude that, even when considering both cases together for a largely homogenous group of workers asserting the same tip pooling claims, Plaintiff's counsel still have not been paid what Judge Crabtree found to be the "customary fee" of the lodestar, and, in fact, have been paid far less.[11]

In sum, the lodestar analysis confirms that the requested percentage fee is reasonable.

---

[11] *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993) ("if the plaintiff can prove that the fees and expenses incurred in the other litigation resulted in work product that was actually utilized in the instant litigation, that the time spent on other litigation was "inextricably linked" to the issues raised in the present litigation, and that plaintiff has not previously been compensated for those fees and expenses, then the district court may include those fees and expenses in its fee award.").

### C.    The *Johnson* factors confirm the reasonableness of the requested percentage.

The Tenth Circuit requires all attorneys' fees awards to be considered in light of the *Johnson* factors. *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)). The *Johnson* factors—(1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases—weigh in favor of approving the requested 25% fee.

Plaintiff previously addressed the *Johnson* factors at length and, for the sake of brevity, relies on that analysis here (*see* Doc. 41 at 19-26). Rather than simply repeat the *Johnson* factors analysis this Court has already reviewed, Plaintiff focuses on additional aspects of the most critical *Johnson* factors that support the reduced fee request in consideration of the points set out in the Court's Order.

### i.    The "strong result" obtained supports the requested fee (Factor 8).

The Supreme Court regards the degree of success obtained as the "the most critical factor" in the fee award analysis. *Hensley*, 461 U.S. at 436. This Court described the result here as follows:

> The high percentage of recovery, the limited release, the direct mailing of checks with no claims process and the absence of any reversion of uncollected payments to defendants demonstrate a strong result for collective members.

Order, Doc. 44 at 9. Given Plaintiff's counsel's decision to reduce their fee request and waive separate entitlement to Westlaw expenses and the Court's reduction of the service award to $1,100, the average *per capita* settlement check now exceeds $1,400. Ricke Decl. at ¶ 3. For the reasons

12

stated in the opening approval brief, recovering 77% of unpaid wages and sending meaningful settlement checks with no claims process in exchange for limited release is a significant recovery. Order, Doc. 44 at 8-9.

In addition to the points made in Plaintiff's opening brief, Plaintiff's counsel also urge the Court to consider that Plaintiff's counsel's work brought about the end of the challenged tip pooling practice. Following the successful resolution of the *James* case in 2022, Plaintiff's counsel learned of the continued practice in late 2023 and contacted Defendants' counsel regarding a tolling agreement while Plaintiff's counsel investigated the claims. Shortly thereafter, Defendants ceased the tip pooling practice in March 2024. Although not a formal term of the Settlement Agreement, the Court can infer a causal relationship between Plaintiff's counsel's work on *James* coupled with the investigation in this case and the end of the challenged practice, which further supports the requested award of attorneys' fees. Ricke Decl. at ¶¶ 3-5; *see also Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, 2008 WL 4724499, at *13 (E.D. Ky. Oct. 23, 2008) ("The results obtained by plaintiffs' counsel include not just monetary damages but also policy changes that will benefit all … employees" where policy changes were part of the settlement agreement). But for Plaintiff's counsel's work, it is likely the challenged tip pooling practice would still be in place and, because it appears Plaintiff's counsel are the only lawyers to have brought these specific tip pooling claims, it is also likely the collective members would have recovered nothing. Ricke Decl. at ¶ 5. This factor supports the requested fee.

  **ii. This case involved novel and complicated issues under the FLSA (Factor 2).**

This Court identified several aspects of what made this case complicated and the result uncertain in its Order. In finding that "the parties have shown that serious question of law and fact place the ultimate outcome of the litigation in doubt," the Court pointed to various of Defendants'

legal positions on which a litigated resolution would turn: (1) no case law or legal authority suggests that tipped employees cannot share tips with other tipped employees who are on PTO; (2) the FLSA does not regulate the payment of PTO at all; (3) when Dual Rate Supervisors take PTO, they are not working in a dealer or supervisor role because they are not working at all; and (4) Dual Rate Supervisors would not qualify as managers or supervisors under Department of Labor guidance. Order, Doc. 44 at 8, n.3. Similarly, Judge Crabtree found "the claims and defenses in this case present a *bona fide* dispute whether defendants violated the FLSA, with the potential for either side to prevail if the case continued." *James*, 2022 WL 4482477, at *9. To that end, Judge Crabtree found the novelty and difficulty of the questions presented in *James* supported an award of fees that far exceeds what is requested here. *Id*. at *15 ("Plaintiff's counsel asserts that this wage and hour case presented novel and complex issues that remain unsettled under Tenth Circuit law. The court agrees."). These questions have not yet been resolved, and, because of Plaintiff's counsel's efforts across two cases, they need not be as Defendants have ceased the challenged practice. Ricke Decl. at ¶ 5. This factor supports the requested fee.

### iii. Significant skill was required to achieve this result (Factors 3 and 9), which is relevant to the risk Plaintiff's counsel faced in pressing these claims (Factor 6).

Plaintiff has set out above in both the lodestar analysis and in aspects of the *Johnson* factors that this case was novel and complex and that Plaintiff's counsel delivered a "strong result for collective members" against a well-defended suite of Defendants. Order, Doc. 44 at 9. The Court's Order directs Plaintiff's counsel to "account for the fact that although they took this case on a contingent fee basis, they did so with minimal to no risk" citing to Mr. Ricke's Declaration (Doc. 41-1) attesting to Plaintiff's counsel significant experience in similar cases and the earlier *James* case. Doc. 44 at 12. Plaintiff's counsel heeded the Court's instruction and voluntarily reduced their fee request significantly from 33.33% to 25% of the common fund.

14

Although respectful of the Court's position, Plaintiff's counsel do believe that the case was risky because, as both this Court and Judge Crabtree pointed out, Defendants' arguments placed the ultimate outcome in doubt. Doc. 44 at 8; *James*, 2022 WL 4482477, at *9. However, Plaintiff's counsel urge the Court to consider that, if Plaintiff's counsel's skill and experience is meaningful enough to mitigate the risk of the contingency fee arrangement, that weighs heavily in favor of approving the requested fee based on the corollary *Johnson* factors that look to counsel's ability. *James*, 2022 WL 4482477, at *15 ("counsel here is quite skilled in litigating wage and hour cases"); *Bartakovits*, 2022 WL 702300, at *3 (Plaintiff's counsel are "uniquely skilled and efficient in prosecuting casino wage and hour cases."); *Adams,* 2023 WL 6536785, at *6 (Plaintiff's counsel "have obtained key rulings relevant to and that have informed the settlement value in this case."). To the extent the Court will remove emphasis from the risk and contingency fee *Johnson* factor, Plaintiff's counsel believe they should apply with equal force to the corresponding skill, experience, and reputation factors.

### iv. The customary fee and awards in similar cases show that the requested one-third fee is reasonable (Factors 5 and 12).

In a common fund situation like this case, the Tenth Circuit has expressed a preference for awarding attorneys' fees on a percentage-of-the-fund basis. *Chieftan Royalty Co.,* 888 F.3d at 458-59. As outlined in Plaintiff's opening brief, "a one-third fee is customary" in common fund cases in the District of Kansas. *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d. 1094, 1113-14 (D. Kan. 2018); Doc. 41 at 22-23 (collecting cases). Here, Plaintiff's counsel have voluntarily reduced their fee request to 25% of the common fund in recognition of the Court's instruction to account for risk, Doc. 44 at 12, which is below the customary fee in this District. Further, the requested 25% fee is lower than the fee percentages awarded to Plaintiff's counsel in each of the three other casino tip pooling matters prosecuted in the Kansas City area where fees were paid

from the common fund.[12] This weighs in favor of approving the reduced fee request.

><blockquote><b>v.    The time and labor required and preclusion of other work (Factors 1 and 4).</b></blockquote>

As with each *Johnson* factor, Plaintiff addressed the time and labor required and preclusion of other work in the opening brief (Doc. 41 at 23-24). Plaintiff also addressed the time and labor required above as part of the lodestar analysis.[13] Plaintiff provides additional context on these two related factors in light of the Court's Order regarding risk. Stueve Siegel Hanson has recently hired additional lawyers because of the need for more capacity due to increased work. Had Plaintiff's counsel not accepted this case, there was no shortage of other work (including both contingent and hourly, non-contingent matters) to fill that time. Against this backdrop, Plaintiff's counsel would carefully consider whether to accept any engagement on a contingency if they knew that they would not be able to recover a percentage-based fee from a fund obtained through the counsel's collective skill, experience, and reputation. Ricke Decl. at ¶ 38; *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th at 1192 ("In a common fund case, the fund, itself, is the measure of an attorney's success.").

* * *

---

[12] *See Lipari-Williams v. Penn National Gaming, Inc.*, Case No. 5:20-cv-06067-SRB, Doc. 149 at ¶ 10 (W.D. Mo. May 25, 2023) (Bough, J.) (awarding Plaintiff's counsel 35% of $5.5 million fund in a casino tip pooling (among other claims) class and collective prosecuted by Plaintiff's counsel); *Lockett v. Pinnacle Ent.*, Case No. 4:19-cv-00358-GAF, Doc. 257 at ¶ 12 (W.D. Mo. Aug. 25, 2023) (Fenner, J.) (awarding Plaintiff's counsel a 35% of $6.25 million fund in a casino tip pooling class and collective action); *Louthain v. The Missouri Gaming Company, LLC*, Case No. 24-06060-CV-SJ-BP, Doc. 29 at ¶¶ 6, 9 (W.D. Mo. Dec. 16, 2024) (Phillips, J.) (awarding Plaintiff's counsel one-third of a $326,061 casino tip pooling class and collective action).

[13] The time and labor "guides the lodestar analysis in a statutory fee-shifting case, but has minimal importance in a percentage of the common fund case." *KPH Healthcare Services, Inc. v. Mylan, N.V.*, 2024 WL 3360499, at *5 (D. Kan. July 9, 2024); *McFadden v. Sprint Commc'ns, LLC,* 2024 WL 3890182, at *7 (D. Kan. Aug. 21, 2024). As the Tenth Circuit has explained, "applying the lodestar method to a common fund case can fail to account for the productive quality of an attorney's labor, that is, whether an attorney's time meaningfully contributed to benefits conferred on the class." *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th at 1192.

As to the remaining *Johnson* factors, Plaintiff relies on the thorough analysis submitted in the original approval brief, which apply with equal weight to the lower fee request. Doc. 41 at 19-26. Plaintiff respectfully requests the Court award 25% of the common fund as attorneys' fees as reasonable under the percentage-of-the-fund method as confirmed by the lodestar and *Johnson* factors analysis.

## **CONCLUSION**

As Plaintiff understands the Court's Order, the Court has already found that: (1) final collective certification is appropriate (Doc. 44 at 5-6); (2) the settlement resolves a *bona fide* dispute of FLSA coverage (*id*. at 6-8); and (3) the settlement is a fair and reasonable resolution (*id*. at 8-9). As to the remaining issues presented by Plaintiff's renewed motion for settlement approval, Plaintiff thus respectfully further requests the Court (4) grant Plaintiff Perry a $1,100 service award for the reasons stated in Plaintiff's opening brief (Doc. 41 at 26-29) and as set out in the Court's Order (Doc. 44 at 12); (5) award Plaintiff's counsel 25% of the fund as attorneys' fees totaling $245,250; (6) award Plaintiff's counsel's advanced litigation expenses of $414.60 ($405 filing fee plus $9.60 in PACER costs) for the reasons stated in Plaintiff's opening brief (Doc. 41 at 26); and (7) grant final approval of the FLSA collective settlement and instruct the parties to carry out the terms of the Settlement Agreement.

Dated: September 30, 2025                Respectfully submitted:

**STUEVE SIEGEL HANSON LLP**

*/s/ Alexander T. Ricke*
George A. Hanson, KS Bar No. 16805
Alexander T. Ricke, KS Bar No. 26302
Benjamin J. Stueve, KS Bar No. 28515
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:    (816) 714-7100
Facsimile:    (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
ben.stueve@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, D. Kan. Bar No. 78128
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone:    (816) 781-0002
Facsimile:    (816) 781-1984
ryan@mcclellandlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 30, 2025, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

By:    */s/ Alexander T. Ricke*

**ATTORNEY FOR PLAINTIFF**