IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| AARON V. PERRY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 24-1183-KHV |
| KANSAS STAR CASINO, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Aaron V. Perry, individually and on behalf of others similarly situated, filed suit against various casinos owned and operated by Boyd Gaming Corporation. On October 31, 2024, the Court conditionally certified a collective defined as follows: All persons employed as table games dealers and included within a tip pooling arrangement at a casino property operated by a defendant at any time from January 1, 2022 to March 8, 2024. See Order (Doc. #5). Plaintiffs sue under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. On September 9, 2025, the Court sustained plaintiffs' request for final collective action certification and overruled without prejudice plaintiffs' request for approval of the parties' collective action settlement. Memorandum And Order (Doc. #44). This matter is before the Court on Plaintiff's Renewed Motion For Approval Of FLSA Collective Action Settlement (Doc. #48) filed September 30, 2025. For reasons stated below, the Court sustains plaintiffs' motion in part.

## Factual Background

### I.    Lawsuit And Claims

Aaron Perry worked as a table games dealer (i.e. a casino employee who deals games like blackjack, craps and roulette) earning a sub-minimum wage plus tips at Kansas Star Casino, LLC near Wichita, Kansas. Boyd Gaming Corporation owns and operates Kansas Star Casino and the

other defendants: Par-A-Dice Gaming Corporation, Blue Chip Casino, LLC, Diamond Jo Worth, LLC, Belle of Orleans, LLC, Red River Entertainment of Shreveport, LLC, Treasure Chest Casino, LLC, Boyd Tunica, Inc. and Valley Forge Convention Center Partners, LLC.

Defendants required Mr. Perry and other dealers to pool their tips with fellow dealers at each casino. Plaintiffs allege that for purposes of paying Paid Time Off ("PTO"), defendants violated the FLSA by including a "dual job" position in the tip pool. Specifically, plaintiffs allege that the Dual Rate Supervisor position—where an individual works as both a dealer and a floor supervisor—improperly received PTO from the dealer tip pool for work performed as a non-tipped, managerial floor supervisor.

On October 11, 2024, plaintiffs filed suit, alleging that defendants' tip pooling arrangements at the nine casinos violated the FLSA. Plaintiffs allege that defendants maintained unlawful, mandatory tip pooling arrangements for table games dealers because defendants (1) failed to limit participation in the tip pool to tipped employees, i.e. employees who customarily and regularly receive tips, and (2) kept tips received by employees so that managers and supervisors received a portion of the employees' tips.

Plaintiffs sought to represent a collective consisting of table games dealers who were required to pool their tips at Boyd Gaming casinos. Under 29 U.S.C. § 216(b), the Court conditionally certified a collective defined as follows: All persons employed as table games dealers and included within a tip pooling arrangement at a casino property operated by a defendant at any time from January 1, 2022 to March 8, 2024.[1] See Order (Doc. #5).

In a prior lawsuit, the Honorable Daniel D. Crabtree also certified a tip pool collective of

---

[1]    On March 8, 2024, defendants ceased paying PTO to Dual Rate Supervisors from dealer tip pools.

dealers at Boyd Gaming casinos.  See James v. Boyd Gaming Corp., 522 F. Supp. 3d 892 (D. Kan.

2021).  The Stueve Siegel Hanson law firm and the McClelland Law Firm—counsel for plaintiffs

in this case—also represented plaintiffs in James.  In James, the settlement agreement included a

release of all claims through December 31, 2021.  After the settlement in James, plaintiffs' counsel

learned that at nine Boyd Gaming casinos, defendants continued the same tip pooling practice

which plaintiffs had challenged in James.  This action piggybacks on the claims which plaintiffs

raised in James for a different time period, i.e. January 1, 2022 through March 8, 2024.

## II.    Settlement Agreement

Plaintiffs and defendants have reached a collective action settlement which is limited to the

507 members of the tip pool who returned consent forms to join the collective action which the

Court conditionally certified.  Under the agreement, defendants will pay $981,000 into a Qualified

Settlement Fund that will (1) make settlement payments to collective members; (2) pay Analytics

Consulting, LLC the cost of notice and settlement administration ($19,956, which includes $8,999

for administering the collective notice process); (3) pay a service award of $10,000 to Mr. Perry;

and (4) reimburse plaintiffs' counsel's attorney fees and litigation expenses.

The Qualified Settlement Fund represents 77 per cent of the value of the tip credit and

misallocated tips at issue.  Analytics Consulting will pay each collective member a minimum

payment of $100 plus a pro rata share based on each individual's tip credit and misallocated tip

damages.  In addition to the $981,000, defendants will separately pay the employer's share of

payroll taxes.  Payments to the 507 collective members will average at least $1,225 net of fees and

expenses.  The largest settlement check is nearly $5,000, and 121 workers will recover more than

$2,000.  Analytics Consulting will mail these payments to workers upon court approval with no

claims process and no reversion to defendants of unclaimed funds.  In exchange for these

payments, collective members will release only those claims that were or could have been asserted based on the facts alleged in the <u>Complaint</u> (Doc. #1). Further, defendants have ceased the challenged tip pooling practice.

Within 14 days after the Court approves the settlement, defendants will fund the settlement. Within 30 days of settlement approval, Analytics Consulting will issue checks directly to collective members. For purposes of settlement, the settlement payments will be treated as half wages and half non-wages. If a collective member does not deposit his or her settlement check within 120 days, the settlement payment will be paid to the unclaimed property division of the state where the collective member lives. No unclaimed payments will revert to defendants.

Under the settlement, collective members will release claims against defendants and their affiliates based on tip credit and tip pooling through June 17, 2025, <u>i.e.</u> the date the parties fully executed the agreement.

On June 30, 2025, Analytics Consulting distributed notice of the settlement by email to 499 collective members and by U.S. Mail to eight collective members for whom it had no email address.[2] The notice advised collective members of their projected settlement amounts, how the awards were calculated, the scope of the release, the amount of attorney fees and expenses requested, the amount of the service award requested and the parties' positions on the claims. The notice explained that members must send any objections to plaintiffs' counsel by July 21, 2025. Neither plaintiffs' counsel nor Analytics Consulting received any objections.

In plaintiffs' first motion, plaintiffs requested attorney fees totaling one third of the fund ($327,000), litigation expenses of $1,428.06, and a $10,000 service award to Mr. Perry. On

---

[2]    Three of the 499 email addresses were invalid, so Analytics Consulting sent notice to those collective members by U.S. Mail. None of the mailed notices were returned to Analytics Consulting as undeliverable.

September 9, 2025, the Court sustained plaintiffs' request for final collective action certification and overruled without prejudice plaintiffs' request for approval of the parties' collective action settlement.  Memorandum And Order (Doc. #44).  The Court determined that the parties' settlement resolved a bona fide dispute and that the gross settlement fund of $981,000 was fair and equitable to all parties.  See id. at 6–9.  The Court overruled plaintiffs' counsel's request for a fee of one third of the common fund and ordered counsel to file a renewed motion for approval which included a full lodestar analysis for the requested fee award and a reduced service award ($1,100) to Mr. Perry.

In plaintiffs' renewed motion, plaintiffs seek $245,250.00 in attorney fees (25 per cent of the common fund settlement), litigation expenses of $414.60, and a $1,100 service award to Mr. Perry.   For reasons stated in the prior Memorandum And Order (Doc. #44), the Court approves $414.60 in litigation expenses and a $1,100 incentive fee for Mr. Perry.[3]

### Analysis

Under the FLSA, parties must present a proposed settlement to the Court, which determines whether the settlement is fair and reasonable.  Elston v. Horizon Glob. Ams., Inc., No. 19-2070-KHV, 2020 WL 6318660, at *4 (D. Kan. Oct. 28, 2020).  To approve the settlement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties and (3) the proposed settlement contains an award of reasonable attorney fees.  Id.  The Court also must determine whether Mr. Perry's service award is fair and reasonable. Id.  If the settlement agreement satisfies these requirements, the Court may approve it to promote the policy of encouraging settlement.  Id.

---

[3]    Consistent with the Court's ruling, plaintiffs' counsel revised their request for litigation expenses to exclude Westlaw charges.

The only remaining issue is whether the proposed settlement awards reasonable attorney fees. The FLSA requires that in addition to any judgment awarded to plaintiffs, the Court shall award plaintiffs reasonable attorney fees and costs. 29 U.S.C. § 216(b). Though the Court has discretion to determine the amount and reasonableness of the fee, the FLSA fee award is mandatory. Id.

When a settlement creates a common fund, courts apply one of two methods to determine reasonable attorney fee awards: a percentage of the fund or the lodestar method. See Rosenbaum v. MacAllister, 64 F.3d 1439, 1445 (10th Cir. 1995). The Tenth Circuit applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar. See Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994). In all cases, the Court must consider the factors listed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See Rosenbaum, 64 F.3d at 1445.

Where the parties propose a percentage of the fund approach, as they do in this case, the Court has discretion to reduce an award of attorney fees which it determines would be unreasonable under the lodestar approach. Christeson v. Amazon.com Servs., Inc., No. 18-2043-KHV, 2019 WL 4054032, at *3 (D. Kan. Aug. 28, 2019); see Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002) (lodestar provides check on reasonableness of percentage award); Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000) (lodestar remains useful as baseline and cross check on reasonableness of requested percentage). The percentage reflected in a common fund award must be reasonable and the Court must articulate specific reasons which demonstrate the reasonableness of the percentage and thus the reasonableness of the overall fee award. See Brown v. Phillips Petrol. Co., 838 F.2d 451, 454 (10th Cir. 1988).

To determine reasonableness, the Court relies heavily on the 12 Johnson factors, which are

as follows: (1) the time and labor required, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the legal service properly, (4) whether accepting the case precluded other employment by the attorneys, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or circumstances, (8) the amount involved and results obtained, (9) the attorneys' experience, reputation and ability, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases. Rosenbaum, 64 F.3d at 1445; Johnson, 488 F.2d at 717–19.

When parties reach a settlement under which defendant agrees to not oppose attorney fees that come from a common fund—which is the case here—the Court skeptically examines and analyzes the fee and cost proposal because defendant has no incentive to bargain for lower fees. Elston, 2020 WL 6318660, at *7; Hoffman v. Poulsen Pizza LLC, No. 15-2640-DDC, 2016 WL 2848919, at *4 (D. Kan. May 16, 2016). In addition, the Court previously noted that plaintiffs' counsel have extensive experience in FLSA cases and have already litigated the same tip pooling practice at defendants' casinos in James. Memorandum And Order (Doc. #44) at 12. As a result, a straight percentage award might not be reasonable under Johnson. Id. For these reasons, the Court ordered that any renewed motion for approval of the settlement agreement include a full lodestar analysis. Id. at 11–13. The Court also directed that any renewed motion should account for the fact that although plaintiffs' counsel took this case on a contingent fee basis, they did so with minimal to no risk. See id. at 12.

In the renewed motion, plaintiffs' counsel seek $245,250.00 in attorney fees, which is 25 per cent of the common fund settlement. For reasons explained below, the Court awards fees to plaintiffs' counsel of $196,200, which is 20 per cent of the common fund.

I.    **Lodestar Calculation**

To calculate the lodestar, the Court multiplies the hours that counsel reasonably spent litigating by a reasonable hourly rate.  See Flitton v. Primary Residential Mortg., Inc., 614 F.3d 1173, 1176 (10th Cir. 2010).

A.    Reasonable Hours

The first step in calculating the lodestar is to determine the number of hours that plaintiffs' counsel reasonably expended on the litigation.  Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan., 157 F.3d 1243, 1249 (10th Cir. 1998).  Work is reasonable if it is useful and of a type ordinarily necessary to secure the result obtained.  Johnson v. City of Tulsa, Okla., 489 F.3d 1089, 1107 (10th Cir. 2007).  In reviewing whether counsel's hours were necessary, the Court considers the following factors: (1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side and (6) potential duplication of services by multiple lawyers.  Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998).

When the Court uses the lodestar as a cross check of the reasonableness of the fee under the common fund approach, it need not exhaustively scrutinize the hours documented by counsel.  See Voulgaris v. Array Biopharma, Inc., 60 F.4th 1259, 1267 (10th Cir. 2023) (citing Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000)); Brown, 838 F.2d at 456 (in determining reasonable fees from common benefit fund, court need not use lodestar formulation when reasonable fee is derived by giving greater weight to other Johnson factors).  In overruling plaintiffs' prior motion, however, the Court directed plaintiffs' counsel to file a renewed motion which includes a "full lodestar analysis for the requested fee award."  Memorandum And Order

-8-

(Doc. #44) at 12.

Plaintiffs request fees for 253.4 hours of work between three attorneys and five paralegals or legal assistants from two firms. In support, plaintiff has submitted the <u>Declaration Of Alexander T. Ricke</u> (Doc. #49-1) and the <u>Declaration Of Ryan L. McClelland</u> (Doc. #49-2), which summarize the work of each attorney, paralegal and legal assistant. Plaintiffs' counsel have not submitted the contemporaneous time records which are necessary for a "full lodestar analysis."[4] Specifically, absent detailed billing records, the Court cannot ascertain several factors identified in <u>Robinson</u>, such as whether the tasks being billed would normally be billed to a paying client, the number of hours spent on each task and potential duplication of services by multiple lawyers.

As to the third factor in <u>Robinson</u>—the complexity of the case—this case was not complex. As explained above, after settlement in <u>James</u>, plaintiffs' counsel learned that at nine casinos, defendants continued the same tip pooling practice which plaintiffs had challenged in <u>James</u>. Because plaintiffs' counsel litigated the same claims in <u>James</u> (for a different period) and have significant FLSA litigation experience, this case was streamlined from the start.

As to the fifth factor—the responses necessitated by the maneuvering of the other side—defendant did not maneuver in a way that would necessitate plaintiffs' counsel performing more work than typically required for a case of this nature. Indeed, some seven months before plaintiffs filed suit in this case, defendants ceased paying PTO to Dual Rate Supervisors from dealer tip pools. Defendants also stipulated to conditional collective certification before plaintiffs filed suit.

---

[4]    A full lodestar analysis necessarily includes a review of counsel's detailed billing records. <u>See</u> <u>Case</u>, 157 F.3d at 1250 (under lodestar, plaintiffs' counsel must submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested, and how those hours were allotted to specific tasks"); <u>Donald D. Miller Revocable Fam. Tr. v. DCP Operating Co., LP</u>, No. 18-0199-JH, 2021 WL 6072824, at *4 (E.D. Okla. June 29, 2021) (submissions without detailed time records insufficient to conduct "full lodestar analysis").

After plaintiffs' counsel took limited targeted discovery, the parties reached a settlement.

Despite plaintiffs' counsel's failure to provide detailed time records, the total requested hours of 253.4 appears reasonable based on tasks described in the declarations and the some 25 hours which will be necessary after the Court approves the settlement agreement.[5] Solely for purposes of the lodestar as a cross check, the Court assumes that plaintiffs' counsel reasonably expended 253.4 hours on the litigation.

      B.    <u>Reasonable Rate</u>

The next step in calculating the lodestar is to determine the reasonable hourly rates for counsel.  To determine whether billing rates are reasonable, the Court establishes a rate for each lawyer based upon the norm for comparable private firm lawyers in the area, which the Court calculates at the time of the fee award.  <u>Fish v. Kobach</u>, No. 16-2105-JAR, 2018 WL 3647132, at *6 (D. Kan. Aug. 1, 2018).  A reasonable hourly rate comports with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  <u>Id.</u>  The District of Kansas and the Kansas City metropolitan area comprise the relevant community for determining reasonable market rates.

Plaintiffs seek an hourly billing rate of $975 for Alexander Ricke, $675 for Benjamin Stueve, $850 for Ryan McClelland and between $350 and $400 for paralegals and legal assistants.

---

[5]    <u>See</u> <u>Declaration Of Alexander T. Ricke</u> (Doc. #49-1) at 12–13 (pre-suit investigation and interview of table games dealers, legal research into substantive changes in case law since <u>James</u>, pre-suit negotiations with defense counsel about tolling agreement and stipulation to conditional certification and notice plan, preparing complaint, preparing motion for conditional certification and notice plan, administering notice to nearly 1,000 workers, opting more than 500 individuals into collective, negotiating schedule, preparing interrogatories and requests for production, reviewing responses to written discovery and document production, settlement negotiations, preparation of settlement agreement and attendant documents, distributing notice of settlement and preparing settlement approval motion); <u>id.</u> at 14 (counsel reasonably expect to expend additional 25 hours after settlement approval).

-10-

The requested hourly rates for attorneys are excessive.  In May of 2022, in <u>James</u>, Mr. Ricke reported an hourly billing rate of $675.  <u>See</u> <u>Plaintiffs' Memorandum Of Law In Support Of Unopposed Motion For Approval Of FLSA Collective Action Settlement</u> (Doc. #166-2 filed May 5, 2022 in D. Kan. No. 19-2260), at 12.  Without explaining the increase, Mr. Ricke now seeks a rate which is 45 per cent higher.  The mere fact that Mr. Ricke is now a partner does not justify such a significant increase.  Accordingly, solely for purposes of the lodestar cross check, the Court uses an hourly rate of $750 for Mr. Ricke (his 2022 hourly rate, adjusted for inflation). <u>See</u> BLM Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm (difference from May of 2022 to September of 2025) (last visited Nov. 24, 2025).[6]  The Court also uses an hourly rate of $750 for Mr. McClelland, who has similar experience.  Mr. Stueve has significantly less experience in FLSA cases than Mr. Ricke and Mr. McClelland, so the Court uses an hourly rate of $500 for Mr. Stueve, which corresponds to the firm's hourly rate in 2022 for an attorney with similar experience, adjusted for inflation.[7]  <u>See</u> <u>Plaintiffs' Memorandum Of Law In Support Of</u>

---

[6]    <u>Cf.</u> <u>Skyline Trucking, Inc. v. Truck Ctr. Cos.</u>, No. 22-4052-DDC, 2024 WL 1282457, at *14 (D. Kan. Mar. 26, 2024) (hourly rates between $175 and $625 reasonable based on attorney experience) (collecting cases); <u>Marquez v. Midwest Div. MMC, LLC</u>, No. 19-2362-DDC-ADM, 2022 WL 17093036, at *6 (D. Kan. Nov. 21, 2022) (hourly rate of $600 for partners and $350 for associate reasonable based on extensive experience litigating class and collective action wage and hour lawsuits); <u>Florece v. Jose Pepper's Rests., LLC</u>, No. 20-2339-ADM, 2021 WL 5042715, at *7 (D. Kan. Oct. 29, 2021) (Mitchell, M.J.) (approving $575 and $475 hourly rates in FLSA case).

[7]    The Court recognizes that the rate of inflation does not necessarily reflect how much attorney fee rates have increased because attorneys in a large metropolitan area are in a highly competitive market.  Even so, plaintiff's counsel suggest that the rate of inflation is an appropriate measure to assess the increase in their rates.  <u>See</u> <u>Plaintiff's Memorandum Of Law In Support Of Renewed Motion For Approval Of FLSA Collective Action Settlement</u> (Doc. #49) at 12 (adjusted for inflation and additional experience, plaintiff's counsel's current hourly rates consistent with hourly rates approved in <u>James</u>); <u>id.</u> at 13 (comparing Stueve Siegel Hanson's rates approved in 2009, adjusted for inflation).

Unopposed Motion For Approval Of FLSA Collective Action Settlement (Doc. #166-2 filed May 5, 2022 in D. Kan. No. 19-2260), at 12 (hourly rate of $450 for 2014 law school graduate); https://www.bls.gov/data/inflation_calculator.htm (difference from May of 2022 to September of 2025) (last visited Nov. 24, 2025).

Plaintiffs' requested hourly rate for paralegals and legal assistants (between $350 and $400 depending on experience) also is excessive. The Court adopts an hourly rate of $150 for paralegals and legal assistants.[8]

### C.    Lodestar Calculation

Applying the reasonable number of hours plaintiffs' counsel's law firms spent on the litigation at the above rates, the lodestar is $145,725.[9]

## II.    **Johnson** Factors

The lodestar figure includes most, if not all, of the relevant factors which constitute a reasonable attorney's fee, and therefore the lodestar is a presumptively reasonable fee. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010). Accordingly, in non-common benefit fund cases, the Court can only adjust the lodestar figure in rare circumstance where it does not adequately take into account a factor that may properly be considered in determining a reasonable

---

[8]    See Skyline, 2024 WL 1282457, at *15 ($150 per hour reasonable); Watchous Enters., LLC v. Pac. Nat'l Cap., No. 16-1432-DDC, 2022 WL 746163, at *8 (D. Kan. Mar. 11, 2022) (reasonable paralegal and law clerk rates from $110 to $125); Florece, 2021 WL 5042715, at *7 (preliminarily approving $200 hourly rate for paralegals because counsel relied on percentage of fund method which resulted in total amount generally deemed reasonable); Animal Legal Def. Fund v. Kelly, No. 18-2657-KHV, 2020 WL 4000905, at *9 (D. Kan. July 15, 2020) ($125 per hour reasonable).

[9]    Mr. Ricke: 84 hours x $750 = $63,000; Mr. Stueve: 62.1 hours x $500 = $31,050; Mr. McClelland: 59.3 hours x $750 = $44,475; Paralegals and Legal Assistants: 48 hours x $150 = $7,200.

fee.  Id.  In considering whether to adjust the lodestar, courts typically consider the following:

> (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

Johnson, 488 F.2d at 717–19 (5th Cir. 1974).  Except for the tenth and eleventh factors—which appear neutral and counsel do not address—the Court considers the other ten Johnson factors.

 A. Time And Labor Required

In awarding attorney fees from a common benefit fund, the Court need not use the lodestar to determine the "time and labor involved" if it can derive a reasonable fee by giving greater weight to other factors.  Brown, 838 F.2d at 456.  Here, the Court determined that a full lodestar analysis is necessary to determine the reasonableness of plaintiffs' fee request.  Memorandum And Order (Doc. #44) at 12.  Under the lodestar cross check, the Court assumes that plaintiffs' counsel reasonably expended 253.4 hours on the litigation.

 B. Novelty And Difficulty Of Questions Presented

Because plaintiffs' counsel litigated the same claims in James for a different period, the factual and legal issues in this case were not complicated or novel.

 C. Skill Requisite To Perform The Legal Service Properly

Stueve Siegel Hanson frequently prosecutes matters like this one.  Counsel are extremely knowledgeable about collective action procedure in FLSA actions and the firm is well prepared to manage FLSA cases, whether complex or garden variety.  Again, because of the prior action in James, counsel piggybacked on the work that they performed in that case.

D.    Preclusion Of Other Work And Time Limitations

Plaintiffs argue that Stueve Siegel Hanson recently hired additional lawyers because of the need for more capacity due to increased work and that if counsel did not take this case, they had no shortage of work.  Counsel have not demonstrated, however, that they turned away other work because of this case.  Three attorneys and five paralegals worked less than 300 hours on this case— which suggests that this case did not preclude counsel from doing other work.

E.    Customary Fee And Awards In Similar Cases

While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically a percentage of the fund.  See Rosenbaum, 64 F.3d at 1445; Gottlieb, 43 F.3d at 482.  This Court has also typically applied the percentage of the fund method when awarding fees in common fund, FLSA collective actions. Bruner v. Sprint/United Mgmt. Co., No. 07-2164-KHV, 2009 WL 2058762, at *7 (D. Kan. July 14, 2009).  While courts often approve a one-third fee, fee awards vary from four per cent to 58 per cent of the common fund, and total fee awards have ranged from a few thousand dollars to more than $5 million.  Id.

The most similar case is James, which involved identical claims for a different period.  In James, defendants agreed to pay attorney fees separately from the collective settlement.  While plaintiffs' counsel here seek fees from a common fund, the Court notes that when the parties in James separately negotiated the amount of attorney fees, the parties suggested—and the Court approved—a fee award of half of the lodestar amount.

F.    Whether The Fee Is Fixed Or Contingent

Plaintiffs' counsel took this case on a contingent basis.  Even so, as explained earlier, counsel took this case with minimal to no risk.

G.    Amount Involved And Results Obtained

Plaintiffs' counsel achieved favorable results for the collective.  The settlement fund will make payments to 507 collective members which average $1,225 per member net of fees and expenses.  The largest settlement check is nearly $5,000, and 121 workers will recover more than $2,000.  In addition, defendants will separately pay the employer's share of payroll taxes.

H.    Experience, Reputation And Ability Of Counsel

As noted, Stueve Siegel Hanson frequently prosecutes matters like this one.  Counsel are extremely knowledgeable about collective action procedure in FLSA actions, and the firm is well prepared to manage FLSA cases.

III.    **Reasonable Fee Award**

As explained above, the lodestar is $145,725, which is the presumptively reasonable attorney fee subject to adjustment.  Lippoldt v. Cole, 468 F.3d 1204, 1222 (10th Cir. 2006).  Even so, in FLSA collective actions which create a common fund, the Court has typically awarded fees based on the percentage of the fund method.  Barbosa v. Nat'l Beef Packing Co., LLC, No. 12-2311-KHV, 2015 WL 4920292, at *11 (D. Kan. Aug. 18, 2015); see Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P., 888 F.3d 455, 458–59 (10th Cir. 2017) (expressing preference for percentage of fund approach if fees awarded from common fund).

Plaintiffs argue that a 25 per cent fee (which reflects a 1.2 multiplier of their calculated lodestar amount of $192,000 and approximately a 1.7 multiplier of the Court's calculated lodestar of $145,725) is reasonable because in the related case of James, Judge Crabtree awarded far less than the lodestar and counsel's work in that case benefitted the collective in this case.[10]  See

---

[10]    Plaintiff cites Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 414, 420 (3d Cir. 1993), which held that if plaintiff can prove that fees in another case that was

(continued. . .)

Plaintiff's Memorandum Of Law In Support Of Renewed Motion For Approval Of FLSA Collective Action Settlement (Doc. #49) at 11 ("it is reasonable to consider the significant unpaid lodestar in James against the reasonable multiplier here to conclude that, even when considering both cases together for a largely homogenous group of workers asserting the same tip pooling claims, Plaintiff's counsel still have not been paid what Judge Crabtree found to be the 'customary fee' of the lodestar, and, in fact have been paid far less").  Plaintiffs' counsel insinuate that they were not fully compensated for their work in James.  They ignore the fact that in James, counsel requested a fee which was one half of the lodestar amount—and Judge Crabtree granted that request in full.  Nothing in the record suggests that plaintiffs' counsel requested lower attorney fees in James because counsel were expected to make up the difference in a future case.  The Court assumes that plaintiffs' counsel requested and received reasonable fees in James and independently assesses whether counsel's request *in this case* is reasonable.

Based on the Johnson factors above, the Court finds that a fee award of 20 per cent of the common fund is reasonable.  See Swartz v. D-J Eng'g, Inc., No. 12-cv-1029-DDC, 2016 WL 633872, at *7 (D. Kan. Feb. 17, 2016) (approving fee request of 20 per cent of FLSA settlement fund).[11]  This represents approximately a 1.345 multiplier of the lodestar, which is within the range

---

[10](. . .continued)

"inextricably linked" to present case resulted in work product that was actually utilized in present litigation, the district court may include those prior fees in present award if "plaintiff has not previously been compensated for those fees."  Gulfstream does not apply here.  Plaintiffs' counsel were fully compensated for their fees in James.  As noted above, Judge Crabtree awarded plaintiffs' counsel the full amount of their request, which was one half of the lodestar.

[11]    While an award of 20 per cent of the common fund is near the low end of the range of fee awards in FLSA cases, the award is reasonable in light of the above factors.  See Heffernan Bryant v. Un. Furniture Indus., Inc., 13-cv-246-SA-DAS, 2017 WL 639320, at *5 (N.D. Miss. Feb. 16, 2017) (in common fund cases, fee awards commonly fall between 20 per cent and 50 per cent); Bredbenner v. Liberty Travel, Inc., Nos. 09-905 (MF), 09-1248 (MF), 09-4587 (MF), 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011) (in common fund cases, fee awards generally range
(continued. . .)

of court-approved multipliers in FLSA cases when the lodestar is used as a cross check of the reasonableness of the percentage of a common fund.[12]

  **IT IS THEREFORE ORDERED** that <u>Plaintiff's Renewed Motion For Approval Of FLSA Collective Action Settlement</u> (Doc. #48) filed September 30, 2025 is **SUSTAINED in part. The Court approves the settlement which creates a common fund of $981,000 to be distributed to the 507 collective members.   The Court appoints Analytics Consulting as the third-party settlement administrator and authorizes the following awards from the common fund: (1) plaintiffs' counsel's attorney fees totaling 20 per cent of the fund ($196,200); (2) plaintiffs' counsel's litigation expenses in the amount of $414.60 to be paid from the fund; (3) a $1,100 service award to Mr. Perry to be paid from the fund; and (4) $19,956 to Analytics Consulting for the cost of notice and settlement administration.**

  Dated this 9th day of December, 2025 at Kansas City, Kansas.

            s/ Kathryn H. Vratil
            KATHRYN H. VRATIL
            United States District Judge

---

[11](. . .continued)
from 19 per cent to 45 per cent of settlement fund); <u>see also</u> <u>Gottlieb</u>, 43 F.3d at 487–88 (in class action, affirming special master fee award of 22.5 per cent of common fund; noting that 25 per cent of common fund is "benchmark" award which can be adjusted, or replaced by lodestar calculation, in "special circumstances") (citing <u>Torrisi v. Tucson Elec. Power Co.</u>, 8 F.3d 1370, 1376 (9th Cir. 1993)).  Most importantly, based on plaintiffs' counsel's experience with the same legal issues and settlement with the same defendants in <u>James,</u> counsel took this case with minimal to no risk.

[12]  See <u>Florece</u>, 2021 WL 5042715, at *5–6 (awarding fees of one third of common fund which was 2.65 multiplier of lodestar amount); <u>Marquez</u>, 2022 WL 17093036, at *6 (awarding fees of 30 per cent of common fund which was 1.5 multiplier of lodestar amount); <u>Koehler v. Freightquote.com, Inc.</u>, No. 12-2505-DDC, 2016 WL 3743098, at *8 (D. Kan. July 13, 2016) (awarding fees of one third of common fund which was approximately 1.3 multiplier of lodestar amount); <u>see generally</u> <u>Chieftain Royalty Co. v. XTO Energy Inc.</u>, No. 11-29-KEW, 2018 WL 2296588, at *10 (E.D. Okla. Mar. 27, 2018) (multiplier of 2.58408 well within range of multipliers approved in Tenth Circuit and other circuits when lodestar used as cross check).